23 F.3d 399
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 C & S DOOR CORPORATION, Plaintiff-Appellant,
v.
MORGAN PRODUCTS LIMITED, Defendant-Appellee.
 No. 93-1632.
 United States Court of Appeals, Fourth Circuit.
 Argued: February 7, 1994.
Decided: May 11, 1994.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Judge. (CA-92-852-R)
 Charles Roscoe Beller, III, Charles R. Beller, III, P.C., Christiansburg, Virginia, for Appellant.
 Thomas Daniel Frith, III, Mundy, Rogers & Frith, Roanoke, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before RUSSELL and MICHAEL, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff C & S Door Corporation (C & S) appeals the district court's judgment for defendant Morgan Products, Ltd. (Morgan) on C & S's breach of contract claim. We find no error in this judgment and affirm.
 
 
 2
 * C & S manufactures various types of doors. It sells the majority of its doors to "two-step distributors," who then resell them, largely to building supply houses. Morgan is a two-step distributor with eleven branches. Throughout the period relevant to this litigation, C & S was the exclusive supplier of certain types of doors for ten of Morgan's eleven branches.
 
 
 3
 Beginning in 1988, C & S began giving percentage rebates to Morgan because of the volume of Morgan's purchases. The procedure under which C & S paid these rebates was determined by its fiscal year, which ran from March 1 to February 28. At the end of each fiscal year, C & S would calculate Morgan's rebate by multiplying Morgan's total purchases for that year by its promised rebate percentage, and would then pay Morgan this rebate by crediting Morgan's account.
 
 
 4
 The parties began negotiating Morgan's rebate percentage for the 1992-1993 fiscal year in early 1992. John Sutherland, C & S's president, met with Tom Williams, Morgan's marketing director, to discuss the rebate. After that meeting, on April 29, 1992, Sutherland sent Williams a letter stating that, "[e]ffective April 1, 1992 C & S will accrue a volume rebate on all C & S manufactured items stocked by Morgan Distribution Branches." Sutherland's letter then listed the types of doors C & S sold to Morgan, and indicated that Morgan would be given a five-percent rebate on some types and a threepercent rebate on others. It noted that these rebate terms were "[e]ffective for 1 year." Sutherland signed this letter and asked Williams also to sign it and to return a copy to him.
 
 
 5
 Williams, upon receiving Sutherland's letter, changed the effective date of the rebates from April 1, 1992 to March 1, 1992, signed it, and returned it to Sutherland. The parties now agree that this letter, as modified by Williams, constituted a contract under which C & S would provide to Morgan for the 1992-1993 fiscal year the specified percentage rebates on Morgan's purchases.[1]
 
 
 6
 In September, 1992, Morgan informed C & S that, after a transition period, it would stop purchasing from C & S. C & S had paid no rebate to Morgan for its purchases after March 1, 1992, because, under the parties' custom, C & S was to pay the 1992-1993 fiscal year rebate to Morgan in a lump sum at the end of that fiscal year in February, 1993. C & S informed Morgan by letter in October, 1992, that, under the parties' rebate agreement, a condition precedent to C & S's duty to pay a rebate to Morgan was that Morgan retain C & S as its exclusive supplier for certain types of doors at ten of its eleven branches throughout the 1992-1993 fiscal year. Because Morgan had terminated C & S as a supplier before the end of the 1992-1993 fiscal year, C & S took the position that this condition was not satisfied and, as a result, Morgan was not entitled to any rebate for its purchases in the 1992-1993 fiscal year.
 
 
 7
 Morgan disagreed and calculated, under the terms of the companies' rebate agreement, the rebate to which it was entitled for its purchases during the 1992-1993 fiscal year. It deducted this amount, $51,533.85, from the amount it owed to C & S, sending C & S a series of debit memos to inform it of the deduction. In response, C & S filed this action against Morgan for breach of contract in the Western District of Virginia.
 
 
 8
 After a bench trial, the district court found that Morgan's retention of C & S as an exclusive supplier at ten of its branches for the fiscal year was not a condition precedent to C & S's duty to pay the rebate to Morgan under the parties' rebate agreement. As a result, it determined that Morgan was entitled to the rebate it had taken and entered judgment for Morgan on C & S's breach of contract claim.
 
 II
 
 9
 C & S takes this appeal to argue that the district court erred in finding that Morgan's retention of C & S as an exclusive supplier throughout fiscal year 1992-1993 was not a condition precedent to C & S's duty to pay the agreed rebate. To support this argument, C & S notes that the parties' written rebate agreement indicates that it was "[e]ffective for one year." It asserts that this language, read in conjunction with the companies' prior course of dealing, see Va.Code Ann. Sec. 8.1-205 (Michie 1991) (stating that parties' prior course of dealing may be used to "supplement or qualify terms of [their] agreement"), establishes exclusivity during the fiscal year 1992-1993 as a condition precedent in the parties' rebate agreement. We disagree.
 
 
 10
 The statement in the written rebate agreement that the agreement was effective for one year does not indicate in any way that Morgan's retention of C & S as an exclusive supplier for the fiscal year was a condition precedent to C & S's duty to pay the agreed rebate--the agreement plainly could have been effective for one year without such a condition precedent. And C & S identifies nothing in the companies' prior course of dealing indicating that the rebates C & S agreed to give Morgan in fiscal year 1992-1993 were conditioned on Morgan retaining C & S as an exclusive supplier at its ten branch offices.
 
 
 11
 C & S points out that C & S and Morgan had operated under rebate agreements since 1988 and that, during this period, C & S had been an exclusive supplier at ten of Morgan's branches. That the two companies had, in the past, operated under rebate agreements and that, during this period, C & S was an exclusive supplier for Morgan, however, does not show that these rebate agreements were conditioned on Morgan maintaining C & S as an exclusive supplier. As the district court observed from the bench, C & S may have agreed to give Morgan rebates in order to induce Morgan to purchase as much as possible from C & S, and Morgan then responded to the rebates by purchasing exclusively from C & S; under such an arrangement, Morgan's retention of C & S as an exclusive supplier would not be a condition precedent to C & S's duty to pay the rebates.
 
 
 12
 C & S also notes that the rebates were not paid until the end of each fiscal year. But the payment of these rebates at the end of the fiscal year does not establish that they accrued only at the end of the fiscal year; it is equally likely that they accrued during the fiscal year but, for accounting purposes, were paid at the end.
 
 
 13
 Nothing in the parties' written rebate agreement or their course of dealing, therefore, shows that C & S's duty to pay the agreed rebate was conditioned on Morgan retaining C & S as an exclusive supplier. Morgan was, therefore, entitled to the rebates it took for the purchases it made from C & S during the 1992-1993 fiscal year, and the district court properly ordered judgment for Morgan on C & S's claim.[2]
 
 III
 
 14
 For the reasons stated, we affirm the district court's judgment for Morgan on C & S's claim.
 
 AFFIRMED
 
 
 [1]
 Sutherland testified at trial that he called Williams after receiving the altered copy and complained that the date change was unacceptable; Williams denied receiving such a call. The district court apparently credited Williams' testimony and found that Sutherland had not responded to Williams' changes; as a result, it determined that C & S had accepted the rebate contract with Williams' changes. C & S does not challenge this determination on appeal
 
 
 [2]
 C & S also argues that Morgan's termination of it as a supplier violated Va.Code Ann. Sec. 8.2-306(a) (Michie 1991). This argument is without merit. Section 8.2-306(a) states that when a buyer has made an agreement that it will purchase all of its requirements exclusively from one seller (a requirements contract), the buyer must purchase from the seller all of its "requirements as may occur in good faith." Va.Code Ann. Sec. 8.2-306(a). As Morgan never agreed to purchase exclusively from C & S, section 8.2-306(a) does not apply